cetera, have made is that the court should not have granted the motion regarding the failure to mitigate defense. The position that Warren County asserts that should have been accepted, where Mr. Schaeffer admits, he says, it's virtually the same. The defendant asked him, or the appellee asked him if it was virtually the same. He said, yes, it was. And what we're asserting is that a reasonable jury could have concluded that that is not the same as substantial equivalent. And it was the duty of the employer to specify what all those, how they were similar in there. The Flocka case from the Fifth Circuit specifies that it's not just the job responsibilities, it's the compensation, it's the benefits, it's the prestige of the position. And the defendant did not do that. All it essentially did was identify that it made more money on an hourly rate and that the position performed the same type of job responsibilities. And I think that's what the jury saw as well, because it didn't just say virtually the same. It went through the hourly rate and the job responsibilities, and I think everyone understood that that's what they were referring, what Mr. Schaffer was referring to when he said virtually the same, because it was the same job responsibilities. It was a ferry position, ferrying the same type of hunters. And I don't think in his other one he ferried timber loggers, but in this one it did. But it was the same type of ferrying. You were ferrying people back and forth across an island. But it did not have the same type of retirement or health benefits. And the position offered was, it's not really clear, it wasn't put into the record, but it is a seasonal position. That's something we asked for with a new trial as well. The court granted it the failure to mitigate defense on a judgment as a matter of law, or J&OV, and zeroed us out on back wages and then gave us nominal damages as we asked for a jury instruction on nominal damages. We are asserting that that is a remittiture. The court lowered it to zero, but whether it's lowered to zero or five dollars or five million, whatever it is, it's still a remittiture. And the court should have been required under the Seventh Amendment of the Constitution to give us a new trial for that and declined to do so. I don't think we should have asked, had been required to ask to begin with, but we did and the court declined to do so. What evidence is there in the record before the jury that your client reasonably, diligently pursued other employment? Well, he applied for unemployment, received unemployment, and I guess with unemployment there is a requirement to seek other work, but there is not any, I think, record of where all my client applied in there. That's the defendant's burden. With a failure to mitigate defense, you've got to show, one, that there was a job position available, there was substantial to look for work. And what we're saying is that, one, the defendant has not identified one that was substantially equivalent, but two, it offered no evidence that the plaintiff failed to look for work. It's not the plaintiff's duty to go out and explain where all he applied for work. It's the defendant's duty to show that he failed to do so. Your point is the record is silent as to whether your client did a whole lot to look or did nothing whatsoever to look. That's correct. The record is silent on the issue. All that we have is one job that there is testimony that is virtually the same. You obviously dispute that, but that's all there is. Right. Well, there's two jobs. There's the diamond point job and the smith towing job. The district court found that the smith towing job was not substantially equivalent, and what we appealed on was that the diamond point job, that that was an incorrect judgment of the court. What's the evidence in the record that diamond point is not virtually the same? The only, what we are arguing is that it's the defendant's duty. Since it's their affirmative defense, they have to prove the case. They have to show what the job responsibilities were, what the pay rate was, what the retirement benefits, whether it's full-time, seasonal, I mean not full-time, whether it's a year-round job or seasonal job, whether it's part-time or full-time on there, and all the defendant did was put forward the hourly rate and the general job duties on there. The defendant asked the plaintiff, aren't they virtually the same, and he said yes, but when he was talking about it, it was in the same conversation he was talking about his job duties. He did not admit that they're virtually the same in retirement benefits or health benefits or anything like that. And I think a jury reasonably could have confirmed that that is not the issue. Since the jury ruled in our favor, all inferences go towards our side as to what a jury could have reasonably concluded. But there's no evidence of the jobs being different. Your point is simply that there's insufficient evidence of the jobs being the same. Right. There's no evidence that the jobs are different based on whether they're seasonal or year-round, things we point out that are not in the record. The only stuff in the record was that it was a fairing job and it made an hourly rate a little higher than what he was making. And what we're saying is that that's not enough. You've got to show more, especially when a jury . . . I think the jury could have likely said, okay, that is in our mind that substantial equivalent, but in this situation, the jury ruled for us with all inferences in our favor and said that the plaintiff made a mistake. He was talking about these job duties, and there's nothing here before us on the other issues that we have in our jury instructions that require the defendant to prove, and they've offered no evidence to do that. And I think it was reasonable for a jury to conclude that. So at trial, your side laid behind the log and didn't ask about the differences? That's correct. It's not our responsibility . . . I'm not saying it is. I'm just asking you. That's what happened. That's what happened. Our side relied on that issue is that the defendant had to put forward that evidence, and they did not. And I think the court put in its opinion that we could have come back on rebuttal and clarified some, but we don't think that was necessary. And certainly, we could have specified that it was seasonal instead of year-round, but we think that since it's the defendant's burden, it's not up to us to prove that they're substantially equivalent on there. Now, certainly, a jury could have ruled against Mr. Schaffer on that issue, but since they ruled for him on that issue, I think it's reasonable to conclude that they found that he was not talking about that, was not referring to all those particular terms and with that particular jury instruction. The third issue we've brought forward is the opinion statement and attorney's fees, and this is more of a contingent argument simply as if the court rules for us on either one of our arguments that we'd ask the court to request the district court to reconsider attorney's fees and other damages because that would change the outcome quite significantly because I think the court gave us 8,000 attorney's fees, but that was based on us only getting a dollar after being reduced. The defendant or the appellee has raised several arguments in its argument about whether Mr. Schaffer engaged in protected activity. As we've contended, that is waived. That was not raised in their motion for judgment as a matter of law, and it was only raised in their motion for reconsideration after they had not filed a motion for summary judgment on it and was not raised any further. I think it was preserved in a pretrial order as an issue, but it was not raised as an argument at trial on there. The appellee also raises issues about whether there's sufficient evidence. Would you circle back to that? Yes, sir. Restate that issue again, please. I missed part of it. Sure. The appellee in this is on the waiver. We have said that they have not raised that issue in their motion for judgment as a matter of law, nor did they raise it. Sorry. What waiver issue? That's where I'm missing something. Oh. Activity issues. Yes, the protected activity issue. They're saying that what Mr. Schaffer did by complaining of overtime is not protected because he was an exempt employee on there. Right. And retaliatory discharge. Yes, sir. Right. And we're saying that, one, the Fifth Circuit has found that it is protected, but two, it is waived because it was not raised in a motion for directed verdict or later on in a motion for judgment as a matter of law. Motion for directed verdict? Yes, after we had presented our case. Right. We hadn't had those since 1991. Are you talking about a Rule 50A? Yes, I'm sorry. Okay. That's my question, because there is some confusion about that in the record. There's some language in the record, if I'm talking about the same thing, where Warren County said it filed a motion for judgment as a matter of law. It says that in its red brief, citing to page ROA 574, but that doesn't seem to appear in the record, and we need that clarified when Warren County speaks. Okay. But you're saying there was no Rule 50A. Warren County says there was one. So why do we have a conflict here? Explain that a little bit to us. Well, they did make the motion, but I don't believe that they made a motion under Rule 50A, and the court did not rule on it. During their motion, the court asked the appellee's counsel how many witnesses he planned on calling, and the appellee counsel mentioned only one, probably take 30 minutes, and the court decided to hold his issue in abeyance and let the jury decide the issue. But in that motion, I don't believe the appellee raised that issue in their motion, and if it's in the record, I apologize if I'm wrong. I don't think it is in the record. Right. That's a confusion. Yes, sir. I haven't seen it in the record. I don't believe that the motion was transcribed, and there wasn't a written motion, apparently. Okay. Well, I did not realize that. Well, that's my information, but it either is or it isn't. Yes, sir. The final issue is that the appellee raises that there was not sufficient evidence to find retaliatory discharge, and what they are alleging is that Mr. Poole wasn't aware of what all was going on and that Mr. Carson wasn't aware as well of some of the instances of not working with Mr. Poole, and we think there is sufficient evidence with Mr. Carson. One, Mr. Poole lied about knowing about the complaint of overtime that was made to him. I think a jury worked to conclude that that was the primary motive that he became red-faced when Mr. Schaefer brought the issue up. But as well, Mr. Carson lied about the coverage for Mr. Schaefer to work for him and instructed an employee that we had come testify to prevent him to come testify to the board on behalf of Mr. Schaefer on there. We think that was sufficient evidence to show that Mr. Carson and Mr. Poole were working together. Unless there's any other further questions, I believe that's it. All right. You've saved time for rebuttal. Thank you. Good morning, Your Honor. Mr. Rector, since we were just talking about it, how about giving us your position on whether the retaliatory discharge issue was raised in your 50A motion? Why do we have this confusion? I will say, first of all, Your Honor, I don't believe the motion at the conclusion of the plaintiff's case was transcribed. I don't know why that was the case. It wasn't ordered specifically, but I can't find it in the record of the transcript that I have. Wasn't that your duty since you're relying on that as a cross-appeal? Well, maybe it was, Your Honor. I guess I understood that the entire proceedings of the trial had been reviewed. But when I looked at their form, I thought that they had requested all of the trial transcript. Perhaps I misread it. But we did, of course, obviously, as reflected by the renewal of that motion, we did file them. We did make a motion at the end of the plaintiff's case. But we do not have a transcription of it. If that's your question. Well, for you to be able to urge a rule, appoint a Rule 50B, as you know, you had to have raised it in Rule 50A at the close of their evidence. And we don't, apparently, have any record of that. The only thing, apparently, at the record, Site 737, is this confusion about whether there was a motion. And at the bottom, the Court says, it says, paren, motion not to file. And that's at ROA 737. That's exactly what it says, Your Honor. On the mitigation issue, and I will also say this, Your Honor, regardless of whether it was transcribed or not, the failed case, which came out after our renewed motion for judgment was filed, gives us difficulty as well. Because clearly, we did not bring forward the FLSA. We did not bring forward the retaliation issue in the renewed motion. Admittedly, that's not there. And if it's required to be there under the new failed case, which as I say, was handed down after this motion was filed, then we have a double problem with that. But we don't believe the Court, although that's an interesting question in my mind, and continues to be an interesting question as to whether or not an exempt employee can make a retaliation claim under the FLSA, I don't think the Court has to reach that issue to decide this case. Because I believe that Judge Jordan's decision on the mitigation issue is the correct one in response to what... You agree that you have the burden on... Yes, sir. We have the burden of proof on all of our affirmative defenses, including the affirmative defense of mitigation. The definition of a substantially equivalent job, according to some cases, has four or five elements, depending on which ones you read. Judge Jordan, in oral argument, asked counsel for the plaintiff if those elements, if those ingredients were in fact required elements. Do those have to be shown, all four or five of those, depending on which case you read? Do all of those have to be shown in every case? And as Judge Jordan points out in his order, no one answered that one way or the other at oral argument. I would submit to you that that list of items, which are promotional opportunities, these are the things that have to be equivalent, or allegedly have to be equivalent, promotional opportunities, compensation, job responsibilities, working conditions, and status, there is no case that I'm aware of that says you have to demonstrate each and every one of those. Those are certainly factors that the courts look at. Some of those are applicable in some situations, and some are not. As the district judge pointed out in its order, and it's reflected two or three times in the record, the issue of compensation and job responsibilities being equivalent is not disputed. The plaintiffs have admitted in at least two briefs, and is recognized in Judge Jordan's order, that the plaintiffs admitted that compensation and job responsibilities between the two or three jobs, depending on how you look at it, are equivalent. So as the judge addressed in his order, the only thing left to be discussed is the promotional opportunities, the working conditions, and status. And I think working conditions and status clearly are equivalent. I think we proved that. Mr. Schaffer said out of his own mouth, it's virtually identical job. I'm pushing a barge with a towboat. I'm pushing a barge back and forth across the river. I'm carrying hunters and loggers back and forth across the river. It's virtually the same job. Status is the same. He's a boat captain. He was a boat captain for Warren County. He's a boat captain for either Mr. Smith's towing company or for Diamond Island Barge and Land Company. The only thing that Judge Jordan hesitated about to some degree was status. And he says in his order that, again, and I think he indicates, and I agree with him, that status probably is not an element that could apply in every case, because in every case there is no distinction in status. And I think this would be the case here. Again, you've got a boat captain in both situations. And the last one was promotional opportunities. And the judge hesitated a little bit about this one. But again, I don't think the court found that it was relevant here, because Mr. Schaffer, the plaintiff in this case, has been a boat captain for many, many years. And that's as high as you can go on a boat. If you're the captain, you're in charge. And he was in charge of the boat that he operated for Warren County. He was going to be in charge of the boat that he would operate for anybody else. So I think Judge Jordan was correct in finding that all of those, if they are in fact each required element, that all of those, the record supported all those sufficiently, and that a jury should have recognized that if the jury had been following the instructions. I don't want to leave this area without stating that there is some question, as the trial judge pointed out in his order, as to whether or not we even were required to demonstrate that the two or the three jobs, depending on how you look at it, were substantially equivalent. Because, as Judge Jordan found in his order, this plaintiff made no reasonable effort to find work. He had two job offers, substantially equivalent or not, and he turned them both down. If you look at the record, he plainly says in response to one of my questions at the record, it's in page 1001 through 1003, that exchange there, where he basically says, and doesn't basically say, exactly says, I really didn't want the job. He's talking about the Diamond Island job. We don't know why he didn't want the job. We really don't need to know why he didn't want the job, but for whatever reason, it's clear to us that the plaintiff decided that he no longer wanted to be engaged in this maritime industry that he had been engaged in heretofore. So, I think that the jury made a mistake. I think Judge Jordan corrected it. I think it was clear from all of the testimony that two substantially equivalent jobs were presented to Mr. Schaffer and he turned those down. I don't believe, based on that evidence, that it could be reasonably found by a jury that the plaintiff made reasonable efforts to find work. And that's what Judge Jordan found. I don't see how you could find anything else when you've got two jobs offered to you that you turned down. I will also mention, so that there will not be confusion, and this is reflected in the record, clearly, the Diamond Island job would pay, offered to pay Mr. Schaffer $20 an hour. He had been making $16.55 an hour for the county. That is almost a 20%, according to my math, almost a 21% increase, which would, of course, as the record clearly reflects, and certainly the judge saw this, that clearly is enough to cover any benefits that he was receiving at Warren County that he would not receive at a private employer. As the court knows, at Warren County, he was in the PERS system, Mississippi PERS system, and Warren County was paying on his behalf 15% of his salary. Thereabouts, at the time that he left. But, of course, a 21% increase would more than cover that difference. And then there's about 6% left over that would have been certainly sufficient to, or should have been certainly sufficient to replace his insurance benefit that was being taken care of by Warren County, the record reflecting that Mr. Schaffer is, of course, Medicare eligible. So the $20 an hour job was admitted, I should say, as I said earlier, was admitted by the plaintiff that the compensation is equivalent because of the increase substantially, and I think really more than compensated for the difference. The second job, the Smith towing job, which Judge Jordan found was not equivalent, we believe that was $30 an hour, an almost 100% increase in wages. Judge Jordan found, and we believe incorrectly, that that job was not equivalent because another employee of Smith testified that his, that employee's job was seasonal. I don't believe you can infer that one person, because one person's job is part-time or seasonal, that another person's job would be part-time or seasonal. All of us have employees who are full-time and part-time and do different things, so the testimony that Mr. Brewer had a seasonal job with Smith certainly doesn't raise any inference that the job Mr. Schaffer was offered was part-time, and in fact, if you look at the record, Mr. Schaffer again testified clearly that his job, that his offer was a full-time job. He was offered a full-time job, so I suggest to the Court that both the Smith job at $30 an hour and the other job, the Diamond Island job at $20 an hour were jobs that he had a duty to accept and to, under the law that, under Sellers, the Sellers case and the West case, which clearly say you've got to make reasonable effort to find work. You can't just quit working and then expect to get back pay, and I think that's where we are in this case, Your Honor. On our cross-appeal, I'd like to, in my short time I have left, I'd like to mention those things, a couple of those items there that I have time for. First of all, I would say that the, setting aside the retaliation claim or the viability, I should say, of the, of the retaliation claim, which is, as the Court has pointed out, is suspect. I do think that is an issue that someday needs to be decided, but, because it is unclear to us, particularly in a situation such as this, it was always unclear to me from the very beginning how an employee who is exempt but actually being paid overtime, this was not a situation where the employer was telling him he couldn't have overtime. He was regularly, every two weeks, being paid two hours of overtime, and on this pay period in question that brought this whole thing to the forefront, I think he was paid about 30 hours of overtime, but because of some... Does the statute say it has to be a valid winning claim? Sir? Does the FLSA say that it has to be a winning claim, a prevailing claim, or just any claim under the FLSA? Well, what it says is, in the retaliation statute, it says any employee, and that's the argument. Is it an exempt employee or is it any employee? I don't think the legislative history gives a clear answer to that, frankly, if you look at what little there is, but again, I just can't imagine a situation such as this, where the employee was receiving overtime every pay period. There's no dispute that he is an employee? No, no dispute. But he's a seaman. Exempt as opposed to a non-exempt employee, either way he's an employee. He qualifies, and they admitted that. That's never been disputed, Your Honor. Anyway, I don't waste any more of my short time on that, but I do think that is an issue for the court, if not today, certainly at some point, because it's out there and it is problematic for practitioners, I will say, but at any rate, on the issue of causation and pretext, the jury, as you know, found that our employee, Mr. Poole, the department manager, retaliated against Mr. Schaefer on account of this suggestion that he missed six hours of overtime, and once again, I'll say that I don't really believe the complaint had anything to do with FSLA or overtime, because nobody was denying him overtime. There was just obviously an error, as Mr. Schaefer said in his direct examination. He called it a discrepancy. Somebody, some clerk down the line made a mistake or couldn't read a time card, but at any rate, assuming that that qualifies as something that would be the basis for a retaliation claim, you still have to show, the plaintiff still has to show that whatever complaint he made that's protected under the FLSA in this case, was the but-for cause of his termination. In other words, you still, just like in Title VII cases, you still have to show that your engaging, the plaintiff's engaging in a protected activity, was the but-for cause of the termination. In other words, he would not have been terminated but-for engaging in the protected activity. In this case, Mr. Schaefer had to show that he would not have been terminated but-for his complaint that his paycheck was shorted $49.65, which in his view amounted to overtime. The only evidence of any connection is the $49.65 and that Mr. Poole, as a result of that statement, became red in the face. And then the conversation went downhill from there. If you read in the transcript, there is significant testimony about that two other things happened in that conversation that Judge Jordan characterized as grossly insubordinate. And one of those dealt with criticizing, both of those really dealt with criticizing Mr. Poole's management skills, management ability, even asking him if he was afraid to go to the Board of Supervisors and try to get some additional help. So that conversation, which is the only conversation that is pointed to as the source of the retaliatory animus, covered a number of subjects, at least two of which were-certainly could have given rise to a retaliatory motive on the part of Mr. Poole, neither one of which were protected. So we're back to having to demonstrate, which I think was an impossible burden for the plaintiff, to demonstrate that- You're being asked a question by Judge Howard. I'm sorry. Let me speak up. Do I understand that Schaefer testified that what caused Poole to turn red was the overtime discussion, not the other two discussions? Well, no, he goes on. If you read that dialogue in that section of the testimony, if you read that, he admits that he actually says at some point the other two things that he brought up triggered, uses the word triggered, his anger. So if you look at that section of the transcript at 928 to 930 and then again at 969 to 970, and we've got that verbatim in our brief, he actually says in his testimony that these other subjects, what Judge Jordan referred to as grossly insubordinate conduct, he believes that this is what caused Mr. Poole to become angry, to become, and he does say that he believes that's what triggered Mr. Poole's- I recall he was saying that all of these things triggered. He's not picking and choosing. He's saying each of these things- Well, at one point, there's three things. The overtime, there's a complaint about not having enough help and not mismanagement of the help, and the third complaint is something about a holiday policy that the county has put into place. At some point in his testimony, he refers to two things. At the end of his testimony, he says, I think these two things, and he talked about the holiday pay and the insufficient personnel last in the conversation, and at the end of that dialogue, he says, I think these two things caused the problem. So yes, I think, Your Honor, he- Why is that not enough to require deference to the jury? Well, I don't- I mean, the jury, I mean, obviously can look at that, but the inference is they have to draw should be reasonable, and I just don't see how you could suggest that if the $649 complaint is what caused Mr. Poole to have- to set out to retaliate against Mr. Schaeffer, because it has to be but-for. You have to show that it wouldn't have happened but-for that, and I don't see how you do that when you've got all these other arguments between the two of them going on. That's my problem. Likewise, and I'm out of time, I believe, Your Honor, that the case should be affirmed. I think Judge Jordan made the right decision on the mitigation issue. Clearly, work was available. Clearly, the plaintiff is not entitled to stop working and seek back pay. All right. Thank you, Mr. Rector. Mr. Norris, you've saved time for rebuttal. I'll work back. I guess we were talking about but-for. I'll go ahead and address that first. It's not just the red face issue. There were three things, and Judge Jordan delineated very nicely in his opinion. One was the red face, but two, when asked, Mr. Poole denied that Mr. Schaeffer had made a complaint of overtime, and the jury could have concluded that Mr. Poole was lying to hide his retaliatory animus. The third issue is that Mr. Schaeffer had complained to the supervisor numerous times about other issues, I think including lack of pilots and holiday pay in the past, and had not complained about overtime and had never alleged he'd been retaliated against. Those three things together were pretty strong evidence of the but-for. With regard to the protected activity, the defendant alleges it would not make sense to protect people that are exempt from overtime, but it would be the opposite. The great example or comparator would be how we treat Title VII retaliation claims. What we look at is whether the plaintiff had a good faith belief that they had a discrimination or sexual harassment or something. Same thing with overtime. That's the reason it's written that way is any employee who asserts coverage, not whether they are covered, but whether they assert coverage. The purpose is employees are not lawyers. They don't know all the exemptions or how the Fifth Circuit interprets an exemption. While this court may find an employee is exempt, that employee certainly could have a reasonable belief. In this case, there's no evidence that the plaintiff had a bad faith. It was a comment on the defendant to show that there was a bad faith complaint there. In the issue of mitigation, the defendant says, well, there's a breakup in the Fifth Circuit, but I don't think the court has to decide an issue on that, and the reason is the jury instruction. The jury instruction we used was the Fifth Circuit pattern jury instruction, and it requires that the defendant has to offer virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and not or, and status as the position from the plaintiff was terminated. So why are they not allowed or not entitled to rely on your client's admission that it's virtually the same job? Because— I take your point, it's not specific, but it's a pretty categorical statement, admission. It is a categorical statement, and had the jury ruled against my plaintiff on that issue, then we would have had a very tough road to hoe on that. But what we're saying is that the jury ruled for us on that issue, and putting all reasonable inferences on there, the jury saw the testimony from the plaintiff, and they got their jury instructions and saw, well, did they provide evidence of the working conditions, status? Was this a year-long position? Was it seasonal? Did they specify all these issues out on there, or did the plaintiff just merely make a mistake? Because he's saying he was, it was virtually the same, but at the same time, he's talking about one job being traveling timber. The job was also paying more. That's not the same on there. And the jury could reasonably have inferred that they were not the same on there, and that the defendant did not provide sufficient evidence that they were the same. And while the defendant says, well, there's Fifth Circuit precedent, and says, well, this may should be a factor issue, this court doesn't have to decide that issue, because the defendant agreed to the jury instructions. They did not object to this, and they did not raise that issue on the motion for J&OV, from my understanding. The, I'm sorry, even if this issue and the court were to determine that that is sufficient, we still believe we should get a new trial on damages, because what has happened here is a remititure. The court lowered it to zero, but what it relied upon was that the other job, the smith-towing job that it said was not comparable. The plaintiff had stated that the smith-towing job was immediately available, but the job that the court said was, where he talked about being virtually similar, was not offered until some vague time after unemployment benefits ended. So even if the court were to find that the diamond point job was substantially equivalent, it still should not have lowered it to zero. And since the defendant did not specify the time, it's real unclear as to what that should be. At a minimum, we are saying that we should get a new trial on damages to clarify that issue, because there's no specification as to what the court should have lowered it to if it should have been lowered. Thank you. Thank you, Mr. Norris. May I just ask a quick question, Judge Smith, on our opinion, our court's opinion in Feld, about if you lose on a summary judgment matter, issue a law, that you've got to raise it in a 50A and 50B motion at trial to preserve it. Yes, sir. Because it's not going to be retried. Correct. And this opinion came out after apparently you filed your response to the cross appeal, et cetera, and it's covered in Warren County's brief. What's your position on whether Feld, F-E-L-D, our court's opinion, is retroactive in that sense? I'm not even sure we use retroactivity in civil law, but obviously you think it's probably applicable and dooms the retaliation claim even if it was preserved. Right. Yes, sir. We think that is applicable on there. Retroactivity, I'd have to go back and look at case law. I don't know a case off the top of my head. I mean, certainly on our side we're going to say yes, but honestly, I don't know a case off the top of my head. Thank you. Thank you. All right. Thank you, Mr. Phillips. Your case is under submission. Last case for today.